IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SAN JUAN TOWING AND MARINE SERVICES, INC., et al.,<br><br>          Plaintiffs<br><br>               v.<br><br>THE PUERTO RICO PORTS AUTHORITY, et al.,<br><br>          Defendants | CIVIL NO. 08-1284 (JP) |

**OPINION AND ORDER**

Before the Court are Defendants The Puerto Rico Ports Authority ("PRPA"), Fernando Bonilla ("Bonilla"), and Edwin Rodríguez-Colón's ("Rodríguez") motion for summary judgment (**No. 37**), and Plaintiffs San Juan Towing and Marine Services, Inc. ("SJ Towing"), Mark Payne, Jacqueline Payne, and Conjugal Partnership Payne-Payne's opposition thereto (No. 45). Plaintiffs brought the instant action pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of their rights under the First and Fourteenth Amendments to the United States Constitution; Article II of the Constitution of the Commonwealth of Puerto Rico; and Articles 1054 and 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 3018 and 5141. Plaintiffs allege that Defendant PRPA, its executive director Defendant Bonilla, and its maritime division chief Defendant Rodríguez, discriminated against Plaintiffs on the basis of their political affiliation, by

CIVIL NO. 08-1284 (JP)          -2-

denying Plaintiffs a contract to operate a dry dock facility in the Port of San Juan.

Defendant moves for summary judgment, arguing, *inter alia*, that Plaintiffs' complaint fails because the actual reason for denying the lease is an outstanding debt of over $25,000.00 owed by Plaintiffs to Defendant PRPA. For the reasons stated herein, Defendants' motion is hereby **GRANTED**.

I. **MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE**

The following material facts were deemed uncontested by all parties hereto at the July 2, 2008, Initial Scheduling Conference (No. 25).

1. At all times relevant to this complaint, Defendant Bonilla was the Executive Director of PRPA.
2. At all times relevant to this complaint, Defendant Rodríguez was the head of the Maritime Bureau at PRPA.
3. At all times relevant to this complaint, Plaintiff SJ Towing was a corporation organized and existing under the laws of the Commonwealth of Puerto Rico. It had operations dedicated to commercial ship repair, including mechanical repairs, electrical repairs, and specialized welding for commercial vessels in Puerto Rico and the rest of the Caribbean.
4. At all times relevant to this complaint, Plaintiff Puerto Rico Dry Dock and Marine Works, Inc. ("PR Dry Dock"), was

CIVIL NO. 08-1284 (JP)          -3-

a corporation organized and existing under the laws of the Commonwealth of Puerto Rico. Its main purpose was to service commercial vessels in the Caribbean.

5. At all times relevant to this complaint, Plaintiff Jacqueline Payne was the President and Business Manager of both SJ Towing and PR Dry Dock.

6. At all times relevant to this complaint, Plaintiff Mark Payne was the Vice President and Marine Manager of SJ Towing and of PR Dry Dock.

7. At all times relevant to this complaint, Plaintiffs Mark and Jacqueline Payne are married and have constituted a conjugal partnership.

8. On December 26, 2006, Plaintiff Mark Payne docked the floating dry dock[1] "Perseverance" to the Outfitting Platform located off Pier 15 in the San Juan Harbor.

9. Plaintiff Mark Payne had been previously authorized by PRPA to dock the Perseverance and was further given authorization for exclusive use of an area on the Outfitting Platform located off Pier 15 adjacent to the floating dock Perseverance.

10. The authorization given by PRPA was subject to the formalization of an agreement between the parties for the

---

1. A dry dock is a large dock from which water can be pumped out after a ship has entered, thereby exposing the hull of the ship and facilitating repairs to parts of the ship that would normally be located below the waterline.

CIVIL NO. 08-1284 (JP)              -4-

   use of the facilities located on the Outfitting Platform located off Pier 15 and the floating dock Perseverance.

11. In February 2007, PRPA began the internal process necessary to formalize an agreement concerning the use of the facilities located on the Outfitting Platform located off Pier 15 and floating dock Perseverance.

12. PRPA created a special preferential tariff for this operation given that this particular operation is unique and not contemplated under the current PRPA tariff system.

13. The tariff to be applied to the operation was set at $0.60 per square foot annually.

14. The tariff provided by PRPA to Mark Payne is far lower than other tariffs contemplated under the current tariff system.

15. On July 19, 2007, PRPA requested from Mark Payne a series of documents necessary for the formalization of a contract for the use of the facilities located on the Outfitting Platform located off Pier 15 and the floating dock Perseverance.

16. PRPA issued a second letter on August 20, 2007, requesting the same documents it had previously requested on July 19, 2007.

CIVIL NO. 08-1284 (JP)            -5-

17. PRPA issued a third letter to Mark Payne on September 14, 2007, requesting the necessary documents required for the formalization of the contract with PRPA.

18. On October 9, 2007, Plaintiffs submitted the documents required by PRPA for the formalization of the requested contract.

19. On October 25, 2007, Defendant Rodríguez submitted the order to proceed with the drafting of the contract for the use of the facilities located on the Outfitting Platform located off Pier 15 and the floating dock Perseverance.

20. As part of the contract drafting process, PRPA requires an internal credit evaluation of any party prior to formalization of the final agreement.

21. PRPA does not concede contracts to persons who have a current debt with PRPA.

22. On November 9, 2007, Defendant Rodríguez notified Plaintiffs that they had an outstanding debt balance of $25,925.62 with PRPA and that, in order to proceed with the formalization of the new contract, the current debt had to be paid in full.

23. Defendant Rodríguez issued Plaintiffs four more letters stating that they had an outstanding debt balance with PRPA that had to be paid in full in order to proceed with the new contract. The letters were issued on December 11,

CIVIL NO. 08-1284 (JP)         -6-

       2007, January 10, 2008, February 11, 2008, and March 7, 2008.

  24.  As of March 7, 2008, Plaintiffs had an outstanding debt balance of $39,028.04 with PRPA.

  25.  Various officers of PRPA held a meeting on January 29, 2007, with Alberto Hernández, who represented Mark Payne.

  26.  At all times relevant to the complaint, bulk cargo operations were not moved from the Port of San Juan to the Port of Ponce.

The following facts are deemed uncontested by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

  a.  On May 31, 2007, vendor Caribbean Lighting Products, Corp. shipped a 150 KVA electrical transformer to PRPA, and billed PRPA $17,456.40 for the equipment.[2]

  b.  Miriam Naveira ("Naveira") personally knows Defendant Bonilla.

  c.  On several occasions, Naveira met with Defendant Bonilla as counsel for Plaintiff Mark Payne, to try to resolve the dispute between them.

---

2.  The parties are in dispute as to whether, in addition to the purchase of the transformer, Defendant PRPA had agreed to install the necessary additional equipment to connect the transformer to Plaintiffs' dry dock.

CIVIL NO. 08-1284 (JP)          -7-

    d.    Naveira stated in a sworn statement that Defendant Bonilla expressed to Naveira his discontent with Plaintiff Mark Payne on more than one occasion.

## II. **LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

CIVIL NO. 08-1284 (JP)            -8-

In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 324; Goldman, 985 F.2d at 1116.

### III. **ANALYSIS**

Defendant argues that Plaintiffs' claims alleging political discrimination in violation of the First Amendment must fail because: (1) Plaintiffs do not have a contract with Defendant PRPA for operation of the dry dock at San Juan harbor; and (2) Plaintiffs have failed to proffer evidence to support a finding that political affiliation was a substantial or motivating factor in PRPA's decision

CIVIL NO. 08-1284 (JP)            -9-

to deny the contract.[3]  The Court will now consider Defendant's arguments in turn.

### A.   Plaintiffs' First Amendment Claims

The First Amendment protects associational rights, including the right to be free from discrimination on account of one's political opinions or beliefs.  Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004); LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996). Pursuant to Section 1983, a plaintiff may bring a claim against those who, acting under state government authority, violate rights provided by the constitution or federal law.  Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).

### 1.  Availability of Political Discrimination Claim on Behalf of an Applicant for a Government Contract

The First Amendment protection against political discrimination prohibits state actors from denying a government benefit to an individual on the basis of his political affiliation.  A state actor may not use political affiliation as a basis for terminating a government employee, or an independent contractor working pursuant to a pre-existing commercial relationship.  Bd. of County Comm'rs v.

---

3.  Defendants also argue that Plaintiffs' Fourteenth Amendment procedural due process claim must fail because Plaintiffs cannot demonstrate the existence of a legitimate property interest that was deprived without due process.  The Court will not reach the merits of this argument because the Court finds that Plaintiffs' complaint does not mention a distinct procedural due process claim pursuant to the Fourteenth Amendment.  Rather, Plaintiffs only mention the Fourteenth Amendment in conjunction with the First Amendment, thus indicating that Plaintiffs are referring the Court to the means by which First Amendment rights are held to be applicable to the states.  School Dist. of Abington Tp., Pa. v. Schempp, 374 U.S. 203 (1963).

Umbehr, 518 U.S. 668, 674-675 (1996); Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 9 (1st Cir. 2005).

It is an open question, however, whether the protection against political discrimination extends to bidders or applicants for a new government contract.  Umbehr, 518 U.S. at 685 ("[b]ecause Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts"); Centro Médico del Turabo, Inc., 406 F.3d at 9.

In the instant case, it is uncontested that there was no existing contract between Plaintiffs and Defendant PRPA.  In December 2006, Plaintiffs moved their dry dock to Pier 15 in San Juan Harbor.  Plaintiffs were given a temporary authorization to locate the dry dock at Pier 15, and to begin operating their business at said location.  However, no formal contractual agreement was made, and the parties stipulate that Plaintiffs' authorization to continue operations was subject to the formalization of an agreement between the parties for the use of the facilities in the outfitting platform located off Pier 15.  The process for formalizing an agreement was subsequently derailed when a credit check revealed that Plaintiffs had an existing debt to PRPA of over $25,000.00.  Therefore, on November 9, 2007, Defendant Rodríguez notified Plaintiffs that, pursuant to PRPA policy, a contract could not be entered between the parties while the debt was outstanding.

CIVIL NO. 08-1284 (JP)         -11-

The facts of this case indicate that Plaintiffs can be best described as an applicant or bidder for a government contract. Plaintiffs were new arrivals at Pier 15, having located their operations there less than a year prior to Rodríguez's notification of the outstanding debt. No contract had been concluded, and all parties involved agree that continued authorization to operate at Pier 15 was contingent upon formalizing a contract. Under these circumstances, the Court finds that Plaintiffs did not have an existing commercial relationship with Defendant PRPA.

There is no clear legal authority recognizing the availability of a political discrimination claim brought by individuals such as Plaintiffs, who are applicants for a government contract. In accordance with prior case law in this district, the Court declines to extend the rule that applies to government employees and independent contractors. Prisma Zona Exploratoria de Puerto Rico, Inc. v. Calderón 162 F. Supp. 2d 1 (D.P.R. 2001) (holding that plaintiff who had begun, but not finalized, contract negotiations with public entity had no existing commercial relationship and was therefore not eligible to bring political discrimination claim), aff'd, 310 F.3d 1, 5 (1st Cir. 2002) (". . . the critical question is whether the [public entity] ever assumed a binding obligation . . . to Prisma Zona"). Because Plaintiffs' status as an applicant for a government contract precludes them from stating a cognizable

CIVIL NO. 08-1284 (JP)            -12-

political discrimination claim under the First Amendment, the Court will grant Defendants' motion for summary judgment as to said claim.

### 2.   *Prima Facie* Case of Political Discrimination

Defendants also argue that, even if a political discrimination claim by an individual in Plaintiffs' situation were cognizable under the law, the instant claim would still be dismissed due to Plaintiffs' inability to demonstrate the required *prima facie* case. To make out a *prima facie* case of political discrimination in violation of the First Amendment, a plaintiff bears the burden of producing sufficient evidence, whether direct or circumstantial, that the plaintiff engaged in constitutionally protected conduct and that political affiliation was a substantial or motivating factor behind the challenged state action. See Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 47 (1st Cir. 2004). The plaintiff must point to evidence on the record which, if credited, would permit a rational fact finder to conclude that the challenged action occurred and stemmed from politically based discriminatory animus. González de Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir. 2004).

In the instant case, Plaintiffs' complaint alleges that they were denied a contract to operate their dry dock because of their affiliation with Puerto Rico's New Progressive Party ("NPP"), and in retaliation for Plaintiff Mark Payne's public denouncement of Defendant Bonilla's plans to relocate certain bulk cargo shipping operations from the San Juan Harbor to Ponce. Plaintiffs' sparse

CIVIL NO. 08-1284 (JP)           -13-

opposition to Defendants' motion for summary judgment provides no argument to show that Defendants' denial of a contract was motivated by discriminatory animus against the NPP or against opponents of the plans to relocate operations to Ponce.

To the contrary, the record and the uncontested facts that were agreed to by the parties at the Initial Scheduling Conference ("ISC") show that Defendants declined to enter a contract with Plaintiffs because of Plaintiffs' outstanding debt to PRPA. The parties agreed at the ISC that Plaintiffs have an outstanding debt to PRPA. The parties also agreed that PRPA, as a rule, does not extend contracts to individuals or entities that owe a prior debt to PRPA. Finally, it was also uncontested at the ISC that Defendant Rodríguez sent letters to Plaintiffs on five occasions between November 2007 and March 2008, in which Rodríguez informed Plaintiffs that the debt would need to be brought current before PRPA could proceed with the new contract.

Thus, the uncontested facts and the record developed and argued by the parties leaves no genuine factual question as to Defendants' motives for declining to enter into a contract with Plaintiffs. As Plaintiffs have not offered evidence to permit a rational fact finder to conclude that political affiliation was a motivating factor in Defendants' decision, Plaintiffs are unable to meet their *prima facie* burden. Id. Accordingly, the Court will grant summary judgment for

CIVIL NO. 08-1284 (JP)           -14-

Defendants on Plaintiffs' First Amendment political discrimination claim.

### B. **Plaintiffs' Puerto Rico Law Claims**

Plaintiffs' also bring claims pursuant to Article II of the Constitution of the Commonwealth of Puerto Rico, and Articles 1054 and 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 3018 and 5141.  Having dismissed Plaintiffs' federal law claims, the Court declines to exercise jurisdiction over the remaining Puerto Rico law claims.  See Marrero-Gutiérrez v. Molina, 491 F.3d 1, 7-8 (1st Cir. 2007) (affirming district court's decision to decline jurisdiction over state law claims after dismissing federal claims). The Court will enter judgment dismissing Plaintiffs' Puerto Rico law claims without prejudice.

### IV. **CONCLUSION**

In conclusion, the Court grants Defendant's motion for summary judgment.  The Court will enter a separate judgment dismissing Plaintiffs' federal claims with prejudice, and dismissing Plaintiffs' Puerto Rico law claims without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of March, 2009.

                                        s/Jaime Pieras, Jr.
                                        JAIME PIERAS, JR.
                                U.S. SENIOR DISTRICT JUDGE